# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**JEMECOS LASHUN HOWARD  #R9489**
                                                                                        **PLAINTIFF**

**VERSUS**                                                **CIVIL ACTION NO. 5:10cv163-RHW**

**EUGENE WIGLESWORTH,** *et al.*                                              **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court are motions for summary judgment [46] and [48] filed, respectively, by Defendant Eugene Wiglesworth, and Defendants A.R. Speight, Elliot Beauchamp and Gabriel Walker, in this prisoner civil rights lawsuit which Jemecos Howard filed on October 22, 2010. Howard filed [52] a "Declaration in Opposition" to the summary judgment motions on November 28, 2011, and the motions are now ripe for ruling. All parties have consented to the exercise of jurisdiction by the United States Magistrate [41], and the case was reassigned for all purposes to the undersigned by order [42] entered October 25, 2011.

When he filed this lawsuit, Jemecos Howard was in custody of the Mississippi Department of Corrections (MDOC), confined at Wilkinson County Correctional Facility [WCCF] serving a ten-year sentence for a conviction of robbery from Wayne County, Mississippi. Eugene Wiglesworth is the Director of Religious Programs of the MDOC. [46-1] A.R. Speight is the Chaplain at (WCCF), where Elliot Beauchamp is a corrections Unit Manager and Gabriel Walker was Warden at the time pertinent to this action.

Howard, who converted from Islam to Rastafarian in 2009[1] while he was imprisoned at

---

[1] In a prior lawsuit brought by Howard he claimed to be Rastafarian at least as of July or August 2009. *Howard v. Epps, et al.*, U.S. District Court for the Southern District of Mississippi, Hattiesburg Division, Civil Action No. 2:09cv152-KS-MTP.

South Mississippi Correctional Institution [46-1, p. 6, ¶5], claims the Defendants violated his constitutional right to free exercise of religion by failing or refusing to acknowledge a Rastafarian congregation in the MDOC, by not providing him the Ital or kosher diet prescribed by that religion, and by requiring him to cut his dreadlocks. He requests that Rastafarians be allowed to congregate for religious services, that he be provided the religious diet, and that prison officials refrain from interfering with his dreadlocks. He also seeks punitive damages against Officer Beauchamp for allegedly forcing him to cut his hair when he arrived at WCCF.

In his complaint, Howard alleges Chaplain Wiglesworth and the MDOC Chaplain's Department refused to acknowledge a Rastafarian congregation within MDOC. Howard claims he filed several administrative remedies from January 11, 2010 to February 24, 2010, and that Chaplain Wiglesworth promised him that if he would "stop pursuit of the grievances, that the Chaplins (*sic*) would work with Plaintiff to establish Rastafarian congregation." [1, p. 5] Howard alleges Wiglesworth discriminated against him and provided "inadequate assistance in establishing Rastafarian services." [1, p. 10]

In response to a Court order [10] entered March 1, 2011, requesting "a copy of the ARP[2] documents ... regarding the claims presented in this suit," Howard produced four documents, all of which emanated from SMCI where Howard was incarcerated prior to his relocation to WCCF. The first two documents consist of a first step response form signed by SMCI Chaplain David Smelser on January 11, 2010, and a second step response form signed by SMCI Warden Ronald King on February 24, 2010. The January 11, 2010 document states:

> The Offender is apparently seeking a Chaplin (*sic*) request form through the ARP. *He should submit a Chaplaincy request form and submit it to the Chaplain.* He

---

[2]Administrative Remedy Program – a prisoner must exhaust available administrative remedies prior to filing suit.

will then discuss the religious programming needs with the Area Chaplain who
will coordinate (*sic*) plans with the Area Warden. (emphasis added)

The February 24, 2010 document states:

Your grievance regarding religious services has been reviewed. According to the chaplain's office, *you still have not filed the proper forms and submitted them. It was explained in the first step response that this was necessary before any discussions could begin.* Contact David Smelser if you have any questions and to request any forms you might need. (emphasis added)

[11-1, pp. 1-2] The other two documents are a "sick call request form" dated October 10, 2010, just twelve days before this lawsuit was filed, and the response thereto. In the sick call request, Howard states, "I'm requesting an (Ital) diet I'm an (*sic*) registered Rastafarian here at S.M.C.I.!!!" [11-3, p. 1] The response to the request is, "They don't do this diet here." [11-3, p. 2] Sometime between October 10, 2010 and October 20, 2010, Howard was transferred from SMCI to WCCF.[3]

Chaplain Wiglesworth addresses the documents submitted by Howard, stating that although Chaplain Smelser singed the January 11, 2010 response to Howard's December 1, 2009 ARP which claimed denial of services for a Rastafarian religious group, Howard had made no request of the Chaplaincy Department for Rastafarian services as of that time. Chaplain Wiglesworth states the same is true of the second step ARP dated February 24, 2010 – as of that date, Howard had made no request of the Chaplaincy Department for Rastafarian services. When Chaplain Smelser attempted to assist Howard in identifying Rastafarian tenets and worship practices, Howard was uncooperative, and proved uninformed regarding the tenets and faith practices of his professed religion; he "just wanted to set up a meeting." [46-1, p. 2] On November 29, 2010, *after* he filed the present lawsuit, Howard requested a conference with

---

[3]Howard indicates he is at SMCI on October 10, 2010 when he sends in the sick call request, and he signed and dated his complaint in the present lawsuit on October 20, 2010. The complaint, which was actually filed October 22, 2010, states Howard's address is at WCCF.

WCCF Chaplain A.R. Speight concerning religious/Rastafarian program and services for the month of December 2010; and the following week, on December 6, 2010, he requested a conference with Warden Walker to discuss Rastafarian religious services.  [6-2], [6-1]

## SUMMARY JUDGMENT STANDARD

The Rules provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment is proper where a party fails to adequately establish the existence of an essential element of his case for which he bears the burden of proof. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Id*.  Summary judgment will be granted where there is no genuine issue of material fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)).  An issue of fact is genuine if the evidence is sufficient to permit a reasonable fact finder to find in favor of the nonmoving party. *Lemoine v. New Horizons Ranch and Center, Inc.*, 174 F.3d 629, 633 (5th Cir. 1999). Where the moving party has carried its burden as outlined in Fed. R. Civ. P. 56 (c), the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts  ...  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986)).

**The Wiglesworth Motion:**

Chaplain Wiglesworth denies violating Howard's constitutional rights, submits that

claims against him in his official capacity as MDOC Director of Religious Programs are barred by the Eleventh Amendment, and asserts that he is entitled to qualified immunity on Howard's claims under 42 U.S.C. § 1983 claim. In his affidavit, Chaplain Wiglesworth states he first came into contact with Howard while conducting an Islamic service at SMCI in 2009. Howard asked Wiglesworth who he was, and told him he (Howard) would see Wiglesworth in court due to a lawsuit pending against the department.[4] Howard attended Islamic services for several weeks following this conversation. Later in 2009, Howard submitted a request to change his religion from Islam to Rastafarian. Under Wiglesworth's supervision, Chaplain Bruce Silk assisted Howard with his change of religious affiliation. [46-1, pp. 1-2]

Wiglesworth met with Howard several times between March and October, 2010, in an effort to help Howard establish an outline for Rastafarian worship service which could be proposed to the SMCI Superintendent. Wiglesworth learned that a Rastafarian group had been allowed to meet at East Mississippi Correctional Facility at one time, but they had no order of worship or guidelines, and the group was eventually disbanded due to drug related disciplinary problems during the meetings. Wiglesworth explained to Howard that his (Howard's) ability to assist the chaplain in leading a Rastafarian group would be contingent on his disciplinary record, classification and behavior toward prison officials and other inmates. Howard's file showed he was unsuitable to assist in conducting religious services because he was a member and known

---

[4]On August 4, 2009, Howard had filed a lawsuit against MDOC Commissioner Christopher Epps, SMCI Superintendent Ronald King, Captain Brenda Sims and Laura Tilley of the SMCI Inmate Legal Department. All Defendants save Sims were dismissed on July 20, 2010, and a jury trial on March 9, 2011 resulted in a verdict in Sims' favor. In that lawsuit, Howard claimed Epps told him he could not grow dreadlocks, and that Epps and King failed to stop Captain Sims from issuing him Rules Violation Reports. The District Court granted summary judgment dismissing with prejudice Howard's First Amendment claim because Howard "failed to provide any evidence that his dreadlocks were in compliance with policy other than his own unsubstantiated assertion to that effect." *Howard v. Epps, et al.*, U.S. District Court for the Southern District of Mississippi, Hattiesburg Division, Civil Action No. 2:09cv152-KS-MTP, Document [45].

leader of a Security Threat Group or gang, and had received multiple Rules Violation Reports for misbehavior. Furthermore, conversations with Howard made it clear that Howard had no knowledge of worship or faith practices of the Rastafarian religion and could only state that Rastafarians would meet and "reason" together. Howard provided Wiglesworth a list of other inmates of Rastafarian faith, but when Wiglesworth addressed the matter with those individuals, none of them wanted to be identified as affiliated with the Rastafarian religion, and some of them said Howard was "trying to run something." [46-1, pp. 1-3, 5] Still, Chaplain Wiglesworth tried to assist Howard in setting up a Rastafarian service; he even tried to contact a Rastafarian leader in Florida, but his correspondence was returned "undeliverable." [46-1, p. 4]

Under MDOC policy and procedure, when an inmate makes a request for religious services, it is his burden to provide the chaplain with the tenets/beliefs of the faith and the order of worship so it can be approved by the Superintendent of the institution, and the service can be conducted in an orderly manner consistent with security and safety of inmates and prison officials. It is also the inmate's burden to provide the chaplain with the name of a free world religious leader from his faith who can provide the necessary information and lead the service as approved by MDOC. Howard has met neither of these burdens. According to Wiglesworth, a chaplain of a different faith cannot lead Rastafarian services, there are currently no Rastafarian chaplains on staff in any MDOC facility, and as of the date of his affidavit (November 10, 2011) no free-world volunteer from the faith had stepped up to lead a Rastafarian service. [46-1, p. 4] In a nutshell, despite Howard's failure to properly request Rastafarian services of the Chaplaincy Department,[5] Chaplain Wiglesworth diligently, albeit unsuccessfully, tried to accommodate

---

[5]Both the ARP forms Howard presented advised him he needed to submit a Chaplaincy request, and he has provided no evidence that he ever did so.

Howard in setting up a Rastafarian service. Chaplain Wiglesworth states in his affidavit that Howard is free to worship his faith as he understands it privately in his cell. Wiglesworth further states that Howard never made a request to Chaplaincy Department regarding his hair or diet. According to Wiglesworth, he has no authority to approve or disapprove requests regarding religious services, dietary matters or hair style – those decisions must be made by the prison administration. [46-1, pp. 4-5]

In *Howard v. Epps*, 2007 WL 474940 (N.D. Miss. 2007), the Court held an allegation that the MDOC refused to "recognize" a prisoner's religion failed to state a constitutional claim, stating:

> The Mississippi Department of Corrections, as an agency of the State of Mississippi, is charged under the Constitution and RLUIPA with providing some limited accommodation for the religious needs of inmates. It is not in the business of 'recognizing' religions, aside from the recognition intrinsic in accommodation of the practices of various faiths.

Thus, Howard's claim that Chaplain Wiglesworth "failed to acknowledge the Rastafarian congregation" does not state a claim of violation of any constitutional or statutory right. The evidence before the Court does not show that Wiglesworth in any way impeded or interfered with Howard's ability to practice his religion; it does not show that Howard ever presented any claim to Wiglesworth or the Chaplaincy Department regarding diet or hairstyle, and in any event, Wiglesworth's affidavit establishes that he had no authority to do anything about such claims. Plaintiff's failure to present evidence to establish the facts he alleges against Chaplain Wiglesworth renders discussion of the immunity issues raised in Wiglesworth's motion unnecessary. Chaplain Wiglesworth's motion for summary judgment will be granted.

**The Speight, Beauchamp and Walker motion:**

The WCCF defendants, A.R. Speight, Elliot Beauchamp and Gabriel Walker, urge

dismissal of Howard's lawsuit against them because Howard failed to exhaust his administrative remedies before filing suit, or alternatively because he has not shown any of them violated his constitutional rights. The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust administrative remedies, and precludes unexhausted claims from being brought in court. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007)("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). A prisoner has not exhausted available remedies unless he "pursues his grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Failure to exhaust administrative remedies is an affirmative defense on which the Defendant bears the burden of proof. In support of their motion, the WCCF defendants have presented the affidavit of Janice Fountain, Grievance Officer at WCCF. [48-1] The Fountain affidavit sets out the two-step MDOC administrative remedy process which must be completed before an inmate may file suit. First the inmate must submit a request for relief directly to the official responsible for the department to which the grievance applies. If dissatisfied with the response he receives, he must then submit a second step request to the Superintendent of the facility where the inmate is housed. After the process is completed, the inmate receives a certificate confirming he has properly fulfilled the requirements of the Administrative Remedy Process.

Fountain's search of Howard's WCCF records revealed no grievance from Howard for religious services, for having his hair forcibly cut or for a Rastafarian diet. [48-1, p. 1] Howard's complete grievance file from WCCF, which is attached to Fountain's affidavit, confirms that Howard filed no ARP grievance at WCCF prior to filing this lawsuit, thus he did

not exhaust his administrative remedies as to any of his claims against Speight, Beauchamp and Walker before filing suit. [48-1, pp. 3-23]  Indeed, the pleadings and exhibits before the Court show that Howard filed this action less than two weeks after arriving at WCCF.  *See*, footnote 3. Because the evidence shows Howard filed no grievance at WCCF before filing suit, the Court is compelled to hold he failed to exhaust administrative remedies as to his claims against Speight, Beauchamp and Walker.  Even if that were not the case, Howard's claims would fail.

Howard's claim against Chaplain Speight and Warden Walker is that they did not provide a Rastafarian religious service.  By affidavit, Chaplain Speight states it is his goal to provide all inmates at the facility the opportunity to practice their respective religious beliefs in a manner consistent with prison policy and security.  Inmates may assist, but are not allowed to lead religious services under MDOC policy.  Speight told Howard there must be a volunteer to lead his services, and asked Howard for names of individuals who may be willing to do so, but Howard provided no names to contact.  While services are unavailable at WCCF due to the lack of a volunteer to lead them, Speight states Howard is allowed to possess and study Rastafarian literature, pray, meditate and reason about his faith so long as he follows prison rules and regulations; this includes growing dreadlocks that are no longer than three inches in accordance with MDOC policy.  Of the over 800 inmates at WCCF, Howard is the only one Speight knows to have a designated religious preference of Rastafarian, and since Howard is a protective custody inmate, he may not mingle with the general prison population, so even if Rastafarian services could be arranged, he would be limited to services in his protective custody pod. [48-3]

To the extent that Howard may be challenging prison regulations which require that volunteers lead religious services, the Fifth Circuit has held that such prison regulations do not violate the First Amendment free exercise clause.  *Mayfield v. Texas Department of Criminal*

*Justice*, 529 F.3d 599, 608 (5th Cir. 2008); *Baranowski v. Hart*, 486 F.3d 112, 121-122 (5th Cir. 2007); *Adkins v. Kaspar*, 393 F.3d 559, 565 (5th Cir. 2004). Howard has presented no evidence of unequal application of the regulation requiring volunteers to lead religious services. The Court is of the opinion that prison officials can hardly be held liable for failing to secure volunteers to lead Rastafarian services when Howard, himself, provided no names of any volunteers to lead such services.

Howard's claim with regard to his hair would fail because here, as in his prior lawsuit, Howard has failed to provide any evidence that his dreadlocks were in compliance with policy other than his own unsubstantiated assertion to that effect. Elliott Beauchamp's affidavit states that when Howard first arrived at WCCF, his hair was longer than the three-inch maximum hair length regulation. While Howard was in a holding cell during the intake process at WCCF, Beauchamp told him if he did not shorten his hair to three inches in accordance with MDOC regulations, he would have to go to segregation. When Beauchamp later came back by the holding cell, Howard had cut his own hair to comply with MDOC regulations. [48-4] The MDOC regulation regarding hair length has been held constitutional. *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992). *See also, Howard v. Epps*, 2010 WL 2925375 *2-4 (S.D. Miss. 2010)(upholding regulations that impinge upon an inmate's First Amendment right to free exercise of religion where the regulations are reasonably related to legitimate penological interests); *Howard v. Epps*, 2007 WL 474940 *4 n. 3 (N.D. Miss. 2007). In *Scott*, the Court held the "regulation requiring that a prisoner's hair remain short throughout his stay in prison is reasonably related to legitimate penological concerns of identification and security," and does not violate the free exercise clause of the First Amendment. *Scott*, 961 F.2d at 80. Finally, Howard's claim that he has been denied a Rastafarian diet would fail since he did not present a request for

such a diet to WCCF officials, and because "prisons need not respond to particularized religious dietary requests to comply with the First Amendment." *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988). Based on the evidence presented and applicable law, the Court finds both motions for summary judgment well-taken. It is therefore,

**ORDERED** that Defendants' motions for summary judgment are granted, and this case is dismissed.

SO ORDERED, this the 5th day of September, 2012.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE